UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LEIGH LANEY | CIVIL ACTION |
| VERSUS | |
| STATE OF LOUISIANA THROUGH DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS DIVISION OF PROBATION AND PAROLE, ET AL. | NO.: 15-00848-BAJ-RLB |

RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 27)** filed by Defendants the State of Louisiana, through Department of Public Safety and Corrections, Division of Probation and Parole ("P&P") and Secretary James LeBlanc. The Motion is unopposed. The Court has jurisdiction under 28 U.S.C. § 1331. For the following reasons, the **Motion for Summary Judgment (Doc. 27)** is **GRANTED**.

I. BACKGROUND

The following facts are undisputed.[1] On July 16, 2007, Plaintiff Leigh Laney began working at P&P in the position of "Administrative Coordinator 3." (Doc. 27-2 at ¶ 1). As an Administrative Coordinator, Plaintiff was responsible for a variety of administrative duties including answering phones, fingerprinting offenders, filing documents, inputting data on a computer, and driving a state vehicle for trips to headquarters or court. (Id. at ¶ 2). Plaintiff's job duties required that she be able to

---

[1] The facts recounted in this section are derived from the Defendants' Statement of Undisputed Facts (Doc. 27-2). Because Plaintiff did not oppose the Motion, the Court accepts as undisputed the facts offered by Defendants. See *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

1

sit and stand for prolonged periods of time. (*Id.*). Depending on the assigned task, Plaintiff was required to complete clerical tasks within 1-2 days. (*Id.* at ¶¶ 2–3).

In 2009, Plaintiff's productivity began to diminish. (*Id.* at ¶ 7). Plaintiff also began taking leave so frequently that she often did not have leave to take and was placed on leave without pay. (*Id.*). Plaintiff's immediate supervisor, Georgiana Guthrie, and other supervisors met on at least three occasions to discuss and adjust Plaintiff's workload and duties because she was not performing her work or not completing it in a timely manner. (Doc. 27-2 at ¶ 8).

In June 2012, Plaintiff's supervisor implemented a work plan to help get Plaintiff caught up on work. (*Id.* at ¶ 9). However, despite the work plan, Plaintiff still fell behind. (*Id.*). Then in August 2013, P&P approved Plaintiff's FMLA for "fibromyalgia and a lump in her breast." (*Id.* at ¶ 10). Plaintiff never requested any other accommodations for her conditions. (Doc. 27-2 at ¶ 11). However, even following her FMLA leave, Plaintiff often took leave for conditions that were not her FMLA approved conditions.[2] (*Id.* at ¶ 10). Thereafter, in November 2013, P&P gave Plaintiff a Letter of Improvement regarding her abuse of leave. (*Id.* at ¶ 12). In the letter, P&P explained its leave policies, placed Plaintiff on a leave directive,[3] and directed her to inform her immediate supervisor anytime she was unable to report to work. (*Id.*).

---

[2] For example, Plaintiff received eight hours of leave without pay on September 20, 2013. (Doc. 27-6, Exhibit 3 at p. 26). No reason for Plaintiff's absence was offered by either party.

[3] Because of her excessive unscheduled absences, the Letter of Improvement directed that Plaintiff's annual leave would not be approved except for emergency situations (as determined by the Department) for a period of six months. (Doc. 27-9 at p. 2). Further, any requests for annual leave determined to be a non-emergency would not be approved and Plaintiff would be placed on unauthorized leave without pay, with the exclusion of sick leave utilized for Plaintiff's FMLA eligibility. (*Id.* at pp. 2–3).

2

On February 5, 2014, Plaintiff contacted a supervisor to report that she was having car trouble and would not be at work. (*Id.* at ¶ 13). On February 10th, Guthrie gave Plaintiff a letter stating that she would not be granted leave for February 5th to get her car repaired because it did not qualify as an emergency, as required by the Letter of Improvement. (*Id.*). Initially, Plaintiff was given eight hours of leave without pay for February 5th. (Doc. 27-2 at ¶ 13). However, the letter given to Plaintiff was revised because Plaintiff had previously been approved to leave work at 1:30pm for a doctor's appointment related to one of her FMLA conditions. (*Id.*). Plaintiff was granted three hours of sick leave/FMLA leave for her doctor's appointment and five hours of leave without pay for her car repair. (*Id.*).

Throughout the month of February 2014, Plaintiff was on FMLA leave on four consecutive days, which prompted the need for Plaintiff to have an Essential Functions Form completed and submitted by her doctor.[4] (*Id.* at ¶ 14). On March 7, 2014, Plaintiff submitted a checklist, which she completed herself, and an Essential Job Functions Statement that her doctor, Dr. Scott Nyboer, completed and signed on February 27, 2014. (*Id.*). On the checklist, Plaintiff indicated that she was either unable or unwilling to stand, bend and reach, lift and climb to file, as well as sit or stand for extended periods of time. (*Id.*). In the Essential Job Functions Statement, Dr. Nyboer indicated that Plaintiff needed "to be allowed to be off work if her pain is

---

[4] Employees are not allowed to return to work until the Human Resources department can review the Essential Functions forms completed by their doctor "to ensure the employee can safely perform the essential functions of their position consistent with the restrictions required by the employee's doctor(s) sited on the essential functions forms and to determine if a reasonable accommodation is needed and can be provided." (Doc. 27-2 at ¶ 16).

3

flared up which occurs intermittently 1-2 times per month for about 2-3 days length of time. [Plaintiff] also need[ed] to continue with light duty restrictions." (*Id.*).

On April 3, 2014, per Department policy, Plaintiff was placed on enforced FMLA (sick leave) due to the March 7, Essential Functions checklist received by Human Resources ("HR"). (Doc. 27-2 at ¶¶ 15—16). The enforced FMLA (sick leave) was to remain in effect until the Essential Functions Form was completed by Plaintiff's doctor and it could be determined whether Plaintiff was able to perform the essential functions of her job and return to work. (*Id.* at ¶ 16).

On May 8, 2014, six weeks after Plaintiff was placed on enforced FMLA, Plaintiff submitted the Essential Functions Form, completed entirely by Dr. Nyboer. (*Id.* at ¶ 20). The form provided that Plaintiff was unable to "stand, bend and reach, lift and climb to file or retrieve information/documents" or "sit or stand for extended periods of time," and that the following accommodations were required: "light duty restrictions, no lifting > 25 lbs, limit prolonged standing or sitting." (*Id.* at ¶ 21).

By the time this May 8, 2014, request for accommodation was made by Plaintiff's doctor, she already developed a pattern of falling behind on the limited tasks assigned to her. (*Id.* at ¶ 22). Plaintiff nor her doctor provided any specific suggestions on how to accommodate these restrictions. (*Id.*). P&P could identify no other duties that Plaintiff could perform given the nature of her illness. (*Id.*). Plaintiff could not have worked from home because her job duties, such as filing in the closed file room and agents' offices, fingerprinting offenders, accessing the district files even by computer, required that Plaintiff perform her assignments in the office. (*Id.*). When offered a modified work schedule that allowed her to report to work early, stay

late or work on the weekends to catch up on her duties, Plaintiff rarely took advantage of the modified schedule. (*Id.*).

On June 2, 2014, Plaintiff exhausted her FMLA leave and exhausted her sick leave while she was on FMLA leave. (*Id.* at ¶ 24). The next day, Defendants sent Plaintiff a pre-termination review letter outlining a proposed termination. (Doc. 27-2 at ¶ 25). The letter gave Plaintiff until June 13th to respond why she should not be terminated. (*Id.*). Plaintiff faxed a handwritten response on June 12th, which did not address the essential functions issues nor did it suggest any solutions that might help Plaintiff perform the essential functions of her position. (*Id.*).

On June 18, 2014, Defendants sent another letter to Plaintiff indicating that she would be terminated effective July 2, 2014, for non-disciplinary reasons. (*Id.* at ¶ 26). The non-disciplinary termination was in accordance with Louisiana Civil Service Rule 12.6, which provides that an employee may be non-disciplinarily removed if "the employee is unable to perform the essential functions of his job due to illness or medical disability and has fewer than eight hours of sick leave." (*Id.*).

On August 22, 2014, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On December 18, 2015, Plaintiff filed suit against P&P. (Doc. 1). On April 7, 2016, Plaintiff amended her suit to clarify her claims and added Secretary James LeBlanc, as a Defendant. (Doc. 10). Plaintiff seeks damages and injunctive relief against P&P and Secretary LeBlanc under the Rehabilitation Act, as well as injunctive relief against Secretary LeBlanc under the ADA and FMLA. (Doc. 10 at ¶ 1).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). When the non-movant fails to file a memorandum in opposition to a motion for summary judgment, a court may accept as undisputed the facts that the movant submits in support of its motion. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Even if the motion is unopposed, the Court may not grant a motion for summary judgment unless the moving party meets its burden. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-movant fails to file a memorandum in opposition to a motion for summary judgment, a court may grant the motion if the movant's "submittals ma[k]e a prima facie showing of its entitlement to judgment." *Eversley*, 843 F.2d at 174 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson*, 477 U.S. 242; *Celotex*, 477 U.S. 317).

III. DISCUSSION

A. The Rehabilitation Act and the Americans with Disabilities Act

Plaintiff claims that Defendants are liable under the ADA and the Rehabilitation Act. (Doc. 1 at ¶ 1). The remedies under the Rehabilitation Act are nearly identical to those featured in the ADA. *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The ADA, however, applies only to public entities, including private employers, 42 U.S.C. § 12131(1), whereas the Rehabilitation Act prohibits discrimination in federally-funded programs and activities, 29 U.S.C. § 794(a).[5] Defendants do not dispute that P&P receives federal funds, and the Court will therefore analyze Plaintiff's Rehabilitation Act claims and ADA claims together.

1. Plaintiff's Disability Discrimination Claim

To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that she is a qualified individual within the meaning of the ADA; (2) that she is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

---

[5] The primary difference between the two statutes is that the Rehabilitation Act prohibits discrimination "solely by reason of" a person's disability, whereas the ADA provides that "discrimination need not be the sole reason" for the adverse action or exclusion but rather "a motivating factor." *Pinkerton v. Spellings*, 529 F.3d 513, 516–19 (5th Cir. 2008). Because the Rehabilitation Act has a stricter causation element, a Plaintiff who cannot maintain an ADA claim is unable to meet the elements of a Rehabilitation Act claim.

7

The undisputed evidence shows that Plaintiff is not a qualified individual with a disability. The ADA defines a "qualified individual with a disability" as "an individual who, with or without accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An essential element of any job, is the ability to appear for work. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996); *Grubb v. Sw. Airlines*, 296 F. App'x. 383, 387–88 (5th Cir. 2008) (holding that a lack of physical presence is a commonly-accepted disqualification for ADA protection). Furthermore, "an essential element of any . . . job is an ability . . . to complete assigned tasks within a reasonable period of time." *Rogers*, 87 F.3d at 759 (quoting *Carr v. Reno*, 23 F.3d 525, 530 (D.C.Cir. 1994).

Here, the undisputed evidence reflects that Plaintiff often left work early, reported to work late, did not appear at all, and did not complete all of her assigned tasks. (Doc. 27-2 at ¶¶ 7, 8, 9). In addition, Plaintiff's duties were adjusted several times because she could not complete her work in a timely manner. (*Id.* at ¶ 8). Furthermore, there were additional essential functions of her job that Plaintiff was unable to perform due to her condition. Both Plaintiff and her doctor acknowledged that Plaintiff was unable to bend and reach, lift and climb to file or retrieve information/documents or sit or stand for extended periods of time. (*Id.* at ¶¶ 14, 21). The ability to perform such acts was essential to Plaintiff's position as "Administrative Coordinator 3." (*Id.* at ¶¶ 2, 5). Accordingly, the Court concludes that Plaintiff was not a qualified individual for purposes of the disability discrimination claim asserted under the ADA and the Rehabilitation Act.

The Court also finds that the undisputed evidence reflects that Defendants did not take adverse employment action against Plaintiff because of her disability, which is a required element under the ADA. Terminating an employee because of a disability is prohibited under the ADA. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 700-01 (5th Cir. 2014). The Fifth Circuit applies "a 'motivating factor' test, which provides that 'discrimination need not be the sole reason for the adverse employment decision . . . [so long as it] actually play[s] a role in the employer's decision making process and ha[s] a determinative influence on the outcome.'" *Delaval v. PTech Drilling Tubulars, LLC.*, 824 F.3d 476, 480 (5th Cir. 2016) (citing *LHC Grp.*, 773 F.3d at 694). Also, only "ultimate employment decisions such as hiring, granting leave, discharging, promoting or compensating" rise to the level of an adverse employment action. *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003) (quoting *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999).

Here, Plaintiff asserts that she was subjected to adverse employment actions when: (1) she received the Letter of Improvement; (2) she was placed on administrative leave on February 10, 2014; (3) she was placed on enforced sick leave on April 3, 2014; and (4) she was terminated on July 2, 2014. (Doc. 10 pp. 3—4). The Court finds that these actions were not motivated by Plaintiff's disability and only the termination may qualify as an adverse employment action. The undisputed evidence shows that Plaintiff's non-disciplinary termination was made in accordance with Louisiana Civil Service Rule 12.6, which provides that an employee may be non-disciplinarily removed if "the employee is unable to perform the essential functions of his job due to illness or medical disability and has fewer than eight hours of sick leave." (Doc. 27-2 at ¶ 26). Because Plaintiff has failed to present evidence that

9

controverts Defendants' reasons for firing her, Plaintiff's termination did not violate the ADA or the Rehabilitation Act.[6] Therefore, Defendants are entitled to summary judgment on Plaintiff's disability discrimination claims under the ADA and Rehabilitation Act.

## 2. Plaintiff's Failure to Accommodate Claim

Plaintiff also claims that Defendants are liable for failure to accommodate her due to her medical condition. (Doc. 1). To establish a failure to accommodate claim, a plaintiff must show: (1) that she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. La, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (citing *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir. 2011)).

For the reasons offered in the Court's ruling on Plaintiff's disability discrimination claim, Plaintiff cannot properly be considered to be a qualified individual with a disability. Even so, a plaintiff bears the burden of requesting reasonable accommodations. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). The undisputed facts show that Plaintiff did not request any reasonable accommodations until May 8, 2014, when she submitted her essential functions

---

[6] The Court also notes that the undisputed evidence shows that Defendants were extremely accommodating to Plaintiff. (Doc. 27-2 at ¶ 9). Her job duties were adjusted and modified multiple times because she was not completing her duties timely. (*Id.* at ¶ 8). Moreover, the Court notes that although Defendant granted Plaintiff's FMLA request for fibromyalgia, Courts have repeatedly ruled that fibromyalgia is not an approved disability. *See Bardwell v. Wal-Mart Stores Inc.*, 32 F. App'x 127 (5th Cir. 2002) (employee's fibromyalgia did not substantially limit one or more of employee's major life activities as required by the ADA); *Mincey v. Dow Chem. Co.*, 217 F. Supp. 2d 737, 741 (M.D. La. March 15, 2002) (employee with fibromyalgia did not suffer serious health condition under the FMLA); *Woodland v. Nalco Chem. Co.*, 2004 WL 253442, at *3 (E.D. La. Feb. 10, 2004), *aff'd*, 114 F. App'x 150 (5th Cir. 2004) (employee with fibromyalgia was not disabled under the ADA).

paperwork. (Doc. 27-2 at ¶ 21). However, when provided a modified work schedule as an accommodation that allowed her to report to work early, stay late or work on the weekends to catch up on her duties, Plaintiff rarely took advantage of the modified schedule. (*Id.* at ¶ 22). Therefore, Defendants are entitled to summary judgment on Plaintiff's failure to accommodate claim under the ADA and Rehabilitation Act.

### 3. Plaintiff's Retaliation Claim

Plaintiff also claims that Defendants retaliated against her. (Doc. 1). To establish a prima facie case of retaliation, a plaintiff must prove: (1) that she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and adverse employment action. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n. 8 (5th Cir. 1998).

Here, the Court finds that Plaintiff engaged in protected activity on May 8, 2014, when her doctor made a request for accommodations to Human Resources, and Defendants terminated Plaintiff two months later.[7] However, there is no causal link between Plaintiff's request for accommodations and her termination because Defendants followed their customary regulations and policies when they terminated Plaintiff. The Court is persuaded that Defendants have advanced several legitimate, non-discriminatory reasons for terminating Plaintiff, including that Plaintiff could not perform the essential functions of her position, she exhausted her FMLA leave, and she exhausted her sick leave while she was on FMLA. (Doc. 27-2 at ¶¶ 24–26). These evidentiary grounds of the cited reasons are well documented, *supra*.

---

[7] The Court agrees that the May 8, 2014, Essential Functions paperwork submitted by Plaintiff's doctor constituted a request for accommodation, *i.e.* protected activity. *See* (Exhibit 7 at pp. 2–5; Exhibits 19, 20). Therefore, the events that occurred prior to the Defendants' receiving the May 8, 2014, forms was not protected activity.

11

Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

## B. The Family and Medical Leave Act ("FMLA")

Plaintiff also seeks injunctive relief under the FMLA against Secretary LeBlanc in his official capacity. (Doc. 1 at ¶ 1). An employer who violates the FMLA may be liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). To establish a prima facie case of interference with FMLA rights: (1) Plaintiff must be an eligible employee; (2) the employer must be subject to FMLA's requirements; (3) Plaintiff must be entitled to leave; (4) Plaintiff must give proper notice of an intention to take FMLA leave; and (5) employer must deny Plaintiff benefits to which Plaintiff was entitled under FMLA. *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

Here, the undisputed facts show that during her employment, Plaintiff was an eligible employee. (Doc. 27-2 at ¶ 10; Exhibit 8). It is also undisputed that P&P was subject to FMLA's requirements. (*Id.*). Moreover, Plaintiff was entitled to 480.0 hours of FMLA leave each qualifying year. (*Id.*). Furthermore, Plaintiff gave proper notice of an intention to take FMLA leave. (*Id.*). However, the Court finds that Defendants did not deny Plaintiff her benefits under FMLA. To the contrary, Defendants approved Plaintiff for FMLA in August 2013, but Plaintiff exhausted her FMLA leave before her termination in 2014. (*Id.* at ¶¶ 10, 24). Therefore, Secretary LeBlanc is entitled to summary judgment on Plaintiff's FMLA claim.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 27)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants the State of Louisiana, through Department of Public Safety and Corrections, Division of Probation and Parole and Secretary James LeBlanc, are **DISMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this 8th day of November, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA